Alleging that he was totally and permanently disabled as a result of an injury received while in the employ of a sub-contractor whose principal was engaged in cutting and hauling logs for the Woodard-Walker Lumber Company, Inc., plaintiff filed this suit against that company and its insurer for compensation at the rate of $20 per week for a period not exceeding four hundred weeks.
Defendants filed a plea of vagueness and a prayer for oyer of the contracts between the defendant lumber company and its contractor and of the contract between the contractor and his sub-contractor.
Plaintiff, in answer to the plea of vagueness, set out in detail the extent of the injury to his lower left leg. In answer to the prayer for oyer, he set forth that the contracts between the defendant lumber company, its contractor and his subcontractor were matters peculiarly within the knowledge of the defendants.
Defendants answered, admitting the existence of the contract and sub-contract, the existence of the insurance policy, and the payment of compensation at the rate of $19.64 per week from the date of injury (October 7, 1946) to November 22, 1946. The answer set forth that plaintiff was sufficiently recovered to perform his usual duties at the time compensation was discontinued.
The minutes of the District Court show that the case was first tried on May 23, 1947, and left open to take additional medical testimony in Shreveport. On October 22nd plaintiff filed a motion to re-open the case for the purpose of taking additional medical testimony. A second hearing was held on February 6, 1948. The District Court rendered judgment in favor of plaintiff as prayed for and defendants have appealed.
The record discloses that plaintiff, at the time he was injured, was engaged in logging operations. His immediate employers were Sam and Jack Evans, who had a subcontract from one Porter Cochran, who in turn had a contract with defendant, Woodard-Walker Lumber Company, Inc., for the cutting and hauling of logs. Plaintiff was a "swamper" and engaged in a swamper's duty of clearing trees and underbrush incident to the logging operations. The ax he was using glanced away from a limb and the blade struck plaintiff's lower left leg. The accident occurred in Arkansas just north of the Louisiana line. Immediately after the injury, plaintiff was taken to Dr. Butler at Springhill, Louisiana, for treatment. After the wound had been sutured, plaintiff was taken to his home and treated by Dr. Butler in his bed for several weeks. Compensation was paid him until November 22, 1946.
In the lower Court defendants raised the question as to whether the plaintiff's relations with the Woodard-Walker Lumber Company were such as to entitle him to compensation against them instead of his immediate employers and further whether or not the fact that he was working in the State of Arkansas would keep him from claiming compensation under provisions of the Louisiana Workmen's Compensation Act. Act No. 20 of 1914, as amended. In a well considered written opinion, the District Court ruled adversely *Page 388 
to the defendants on both these points and they have not reurged either of them here.
In this Court defendants' only contention is that plaintiff, as the time he was discharged by Dr. Butler on November 22, 1946, had recovered from the injuries received by him while in the course of his employment on October 7, 1946. Plaintiff's contention is that his leg was not healed at the time he was discharged by the attending physician, and that, although his injuries have reached their maximum recovery, he is still disabled and unable to perform duties of the type and character he was performing when injured.
During the course of the two hearings in this case, nine doctors gave the Court the benefit of their findings and opinions as to plaintiff's condition, four for plaintiff and five for defendants.
We quote below the paragraphs of the learned District Judge's opinion relative to plaintiff's condition:
"The medical testimony as to disability of plaintiff is in such hopeless conflict, and so nearly equally divided as to be of little or no help in reaching a conclusion as to disability, and even experts testifying for defendants are not in full accord, and the same may be said of those testifying for plaintiff.
"Doctors Caldwell, Oxford, Butler, Baker, and Cook are of the opinion that plaintiff is not suffering from any disability resulting from the injury he sustained. Doctors Benton, Garrett, Sentell and Rogers are of the opposite opinion. All of the doctors give their reasons for the conclusions reached by them.
"When testimony is in such hopeless conflict that it cannot be reconciled, the most reasonable testimony is accepted. There is no doubt that plaintiff sustained an injury by striking his left leg just above the ankle with the edge of an axe that he was using to cut out a road so logs could be hauled over it. He was 55 years old, and so far as the record shows, he has a perfect work record as a manual laborer, the only work he is qualified to do. He either suffers pain and is unable to perform work of a reasonable character, or he is a malingerer, seeking to mulct his employer or its insurer out of small compensation payments, when he could earn nearly twice as much by working.
"There is some evidence of an old fracture of this same leg, higher up toward the knee. Dr. Caldwell and Dr. Sentell saw evidence of it in the x-ray pictures, but apparently did not ask plaintiff about it, and he says he had not suffered injury before. At any rate the doctors do not say that this old fracture has anything to do with this present complaint.
"Plaintiff says his ankle, leg and foot pain him, and that he is unable to do work that requires him to stand for long periods of time. In the court room he walked with a cane and appeared to be suffering pain. Counsel for defendant say in their brief that it was noticeable that he was exaggerating his pain and his disability, and that is true, as it is in most all cases of this kind. Plaintiffs who have sustained personal injuries usually try to impress the court with the idea that the disability is worse than it actually is. This is just human nature.
"In any event plaintiff is entitled to a judgment for compensation from November 22 to Dec. 30, 1946. Dr. Butler, who treated him finally discharged him December 30, as able to return to work, but when pinned down on cross examination he would not say that he would have passed plaintiff for industrial employment on that date.
"In view of all the above, my opinion is that there is a preponderance of the evidence in plaintiff's favor and that he ought to recover judgment for $19.64 a week for the period of his disability not to exceed 400 weeks, beginning Oct. 12, 1946, with 5% interest on past due payments from their due date, less compensation paid to November 22, 1946, and costs of this suit, including fees of the doctors $25.00 each."
In the second hearing, plaintiff offered x-ray pictures and the testimony of two physicians who interpreted these as showing a bony deposit indicating a chipped fracture immediately below the scar of the ax wound and about the same size as the scar. These doctors concluded that as a result of the ax wound plaintiff has suffered *Page 389 
a chipped fracture of the left lower tibia, forming a bony deposit which resulted in irritation and pressure on the surrounding tissues, nerves and tendons. One of these doctors gave a description of plaintiff's condition as follows:
"It is my opinion that this man had an axe wound and injury to the left lower leg and a chip fracture of the lateral part of the left lower tibia which has formed a bony deposit and spur formation in this area which is causing his present condition of lame leg and disability, due to irritation and pressure on the surrounding tissues, nerves and tendons, and so forth, which may explain the increase of pain with motion of these parts. The history he gives, and the physical findings on examination and x-ray, confirm the above diagnosis and opinion. It is easy to realize, and it is logical, that the point of an axe could have cut the skin and also injured the underlying bone and periosteum as the bone lies just beneath the skin in this area. Anyone can place his finger on the front of the lower leg and feel the underlying tibia bone with only skin over it, and the axe probably glanced laterally penetrating the leg between the two bones and chipping off a piece of periosteum and bone laterally as seen in the x-rays of the injured leg. The bony deformity lies at the same level and just beneath the skin scar and is also practically the same length and shape as that of the overlying skin scar, as brought out when the leg was x-rayed with two metal hemostat markers pointing to the ends of the skin wound scar. In this leg injury the semi-lateral x-rays of the injured leg shows much more clearly the bony deformity, its shape, size and its relationship to the other bones. It shows more clearly that the deformity is on the periphery part of the bone (tibia) and adjacent to the tibia bone. I am unable to explain the x-ray evidence pointing to an old fracture of the upper one-third of the left fibula bone, although a severe blow on the lower leg could cause such a fracture and injury, though it would be a very unusual thing. It is my opinion that the removal of this bony spur and an exploratory operation of the lower left leg by operation should be considered if his symptoms do not clear up in time (several months or more) as such an operation may or may not give him relief. At the present time I would consider him as being disabled and not a malingerer."
The other doctor introduced at this hearing by plaintiff, when questioned regarding the x-rays, gave the following answer:
"Well, the semi-lateral views or x-rays of the left leg showed a bony deposit, which, in my opinion, showed a chip fracture, and immediately below the scar from the previous axe wound the chipped fracture was about the same size, slightly elliptical in shape, and was located on the lateral surface of the lower tibia."
In general, the defendants' doctors found that plaintiff's left leg showed a bony deposit or calcification, but they were of the opinion that the condition was not disabling. Some testified that calcification of this sort "could cause disability." Under all the circumstances, the medical testimony weighs with plaintiff.
Plaintiff's condition appears to be the result of the evidence of a bony structure inside his left leg and since there is a conflict between the doctors as to the pain and disabling effect of this condition described both as calcification and as a chipped fracture, the appearance, testimony and interest of the plaintiff himself is of considerable importance. The District Judge saw and heard him on the witness stand and had the opportunity of observing his demeanor and use of this limb in the Court room during the course of both hearings. At the time of plaintiff's injury, he was earning wages of $36 per week, almost twice the amount of weekly compensation sued for. Although he had worked for many years as a laborer, he had never before made a claim for compensation. The District Court, with the benefit of personal observation, decided that plaintiff was not a malingerer. There is ample evidence, medical and lay, in the record to sustain his finding.
The judgment is affirmed, with costs. *Page 390